NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTHONY E. SHAW,

   *Plaintiff,*

   v.

NANCY A. BERRYHILL,
**Acting Commissioner of Social Security,**

   *Defendant.*

Civil Action No. 18-2584

OPINION

**ARLEO, UNITED STATES DISTRICT JUDGE**

Before the Court is Anthony E. Shaw's ("Plaintiff") request for review, pursuant to 42 U.S.C. §§ 1383(c)(3), 405(g), of the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for supplemental security income ("SSI") benefits. Plaintiff argues that the Commissioner erred in concluding that Plaintiff's mental impairments do not meet the criteria of the listed impairments and in evaluating Plaintiff's residual functional capacity. For the reasons set forth in this Opinion, the Commissioner's decision is **AFFIRMED**.

## I.    APPLICABLE LAW

### A.  Standard of Review

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Factual findings must be affirmed if they are supported by substantial evidence. Id. Substantial evidence "means such relevant evidence as a

reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995).

Stated differently, substantial evidence consists of "more than a mere scintilla of evidence but may

be less than a preponderance." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).

Even if this Court would have decided the matter differently, it is bound by the Commissioner's

findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc.

Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir.

2001)).

"[T]he substantial evidence standard is a deferential standard of review." Jones v.

Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit

on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the

evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970

F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter

differently, it is bound by the Commissioner's findings of fact so long as they are supported by

substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (quoting

Fargnoli v. Halter, 247 F.3d 34, 35 (3d Cir. 2001)).

In determining whether there is substantial evidence to support the Commissioner's

decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert

opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective

evidence of pain testified to by the claimant and corroborated by family and neighbors; and (4) the

claimant's educational background, work history, and present age." Holley v. Colvin, 975 F. Supp.

2d 467, 475 (D.N.J. 2013) (quoting Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973)).

## B. Five-Step Sequential Analysis

To determine whether a claimant is disabled, the Commissioner must apply a five-step test.

20 C.F.R. § 404.1520(a)(4). First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" is work activity involving physical or mental activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503. Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See 20 C.F.R. § 404.1520(a)(4)(ii).

At the third step, the Commissioner must determine whether there is sufficient evidence to demonstrate that the claimant suffers from a cross-referenced impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the Commissioner must proceed to step four and decide if the claimant has the "residual functional capacity" to perform his past relevant work. If the answer is yes, then the claim for benefits must be denied. Id. At the fifth and final step, if the claimant is unable to engage in past relevant work, the Commissioner must ask "whether work exists in significant numbers in the national economy that the claimant can perform given his medical impairments, age, education, past work experience, and 'residual functional capacity.'" Id.; 20 C.F.R. §§ 404.1520(a)(4)(iii) to (v). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to

the Commissioner at step five.  <u>Id.</u>

## II.    BACKGROUND

### A.  Procedural History

On June 26, 2014, Plaintiff filed an application for SSI benefits, alleging that he became disabled on December 1, 2013 due to affective disorder, back pain, and human immunodeficiency virus ("HIV").[1]  Administrative Transcript ("Tr.") at 160-65.  Plaintiff's claim was denied initially on September 25, 2014 and upon reconsideration on January 2, 2015.  Tr. 69-94.  On February 23, 2017, the Honorable Leonard Olarsch (the "ALJ") issued an opinion concluding that Plaintiff was not disabled.  Tr. 15-23.  On December 28, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Tr. 1-3.  Plaintiff appealed to this Court on February 23, 2018.  ECF No. 1.

### B.  General Background

Plaintiff is fifty-six years old with a history of medical and psychiatric treatment for HIV, back pain, depression, and anxiety.  Tr. 30.  Plaintiff completed two years of college studying business organization and management.  Tr. 30-31.  He has not driven since 1985 because his driver's license was suspended.  Tr. 31.  In the past fifteen years, he held a number of jobs, including maintenance porter at a grocery store, food service/maintenance worker at a hospital, gas station operator, and cashier at a pharmacy.  Tr. 213.  Plaintiff has been laid off from previous jobs due to arguments with co-workers and bosses stemming from anger problems.  Tr. 42-43.

In 2014, Plaintiff completed a function report (the "Function Report") that presented a picture of his daily activities.  Tr. 204-11.  Plaintiff reported lived alone in an apartment but stated that he spends time with others and has no problems getting along with family, friends, neighbors,

---

[1] The parties do not dispute that Plaintiff's HIV is asymptomatic.  <u>See</u> Tr. 43.

or others. Tr. 204, 208. Plaintiff also reported attending groups and doctor's appointments on a regular basis. Tr. 208. Plaintiff reported daily activities including eating breakfast, showering, shopping in stores, washing dishes, doing laundry, sweeping, mopping, and cooking sometimes. Tr. 204-06. He reported trying to go outside daily by walking or using public transportation and stated he has no problems handling his finances. Tr. 206-07.

### C. Medical History[2]

Beginning in 2013, Plaintiff received psychiatric treatment from Dr. Manuel Sanchez at the Smith Center for Infectious Disease ("Smith Center"). Tr. 362-90, 439-543, 552-688. In Plaintiff's visits with Dr. Sanchez, he often observed Plaintiff: (1) to be oriented to person, place, and time; (2) with normal speech; (3) with a productive, coherent, and goal-directed stream of thought; and (4) with an intact memory but with short/poor attention and concentration. Tr. 366, 508-13, 529-30, 533, 539. Dr. Sanchez also noted symptoms of depression and anxiety and prescribed Plaintiff medication for those diagnoses. Tr. 43, 391-95, 545-48.

Dr. Stephen Smith at the Smith Center has also been treating Plaintiff since 2012. Tr. 397. In December 2014, Dr. Smith issued a general medical report that indicated that Plaintiff was HIV positive and had lumbar disc disease causing loss of daily functioning. Tr. 397-427. Dr. Smith opined that Plaintiff could lift and carry up to ten pounds, stand and/or walk for up to two hours and sit for up to six hours in an eight-hour workday. Tr. 397-427.

In September 2014, Dr. Rahel Eyassu reported upon examination that Plaintiff experienced some spine muscle tenderness, but that his straight leg raise was negative. Tr. 430-38. Dr. Eyassu noted that Plaintiff's gait and station were normal, his HIV was asymptomatic, and an x-ray of his

---

[2] The Administrative Transcript contains voluminous medical records. To the extent these records do not relate to the issues on appeal and are not addressed by Plaintiff in his briefing, they are not addressed herein.

lumbar spine was unremarkable. Tr. 430-38. He found that Plaintiff would have limitations with repetitive bending and heavy lifting. Tr. 430-38.

From April to June 2016, Plaintiff received physical therapy for his back pain. Tr. 595-673. Although Plaintiff had some limitations with range of motion and lower extremity weakness, he was able to walk normally and his condition improved with treatment. Tr. 595-673. In October 2016, Erin Santos, PAC treated Plaintiff and noted radiculopathy down the bilateral legs and positive straight leg raise, but normal gait. Tr. 528-43. She also noted that Plaintiff's HIV was stable and that Plaintiff exhibited no symptoms of depression or anxiety. Tr. 521-43.

### D. Dr. Sanchez's Opinions

On July 14, 2014, Dr. Sanchez completed a Mental Impairment Questionnaire assessing Plaintiff's impairments. Tr. 391-96. It contained check-box evaluations that required Dr. Sanchez to select whether Plaintiff was unlimited, limited, seriously limited, unable to meet competitive standards, or not able to function with respect to a range of mental abilities and aptitudes. Tr. 393-94. Dr. Sanchez checked "seriously limited" for most categories pertaining to unskilled work and "limited but satisfactory" as to other abilities. Tr. 393-94. Dr. Sanchez also checked boxes indicating that Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace. Tr. 395.

On November 28, 2016, Dr. Sanchez completed an updated Mental Impairment Questionnaire with identical questions. Tr. 544-49. In this form, Dr. Sanchez checked that Plaintiff was either "seriously limited" or "unable to meet competitive standards" with respect to almost all listed mental abilities. Tr. 546-47. He also opined that Plaintiff had marked restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and extreme

6

difficulties in maintaining concentration, persistence, or pace.  Tr. 548.

### E.  Function Report

On July 22, 2014, Plaintiff completed a Function Report in which he listed his daily activities as having breakfast, showering, group and doctor appointments, watching television, taking walks, visiting with friends, taking medications, and having dinner.  Tr. 204.  He also noted that he sometimes prepares food, washes dishes, does laundry, sweeps, mops, and buys groceries and clothes at the store.  Tr. 206-07.  Plaintiff indicated that his impairments affected lifting, bending, understanding, memory, completing tasks, concentration, and following instructions.  Tr. 208-09. He did not check boxes related to squatting, walking, sitting, stair climbing, standing, reaching, kneeling, or getting along with others.  Tr. 208-09.  Plaintiff did not note any issues getting along with authority figures, but noted issues handling stress and changes in routine.  Tr. 210.

### F.  State Psychologist Assessments

In August 2014, a state agency psychologist reviewed Plaintiff's medical records and opined that Plaintiff did not meet the criteria for Listing 12.04 (for depressive, bipolar, and related disorders), finding that Plaintiff's impairments caused only a mild restriction on activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no repeated episodes of extended decompensation.  Tr. 75-79.  In December 2014, a second state agency psychologist agreed with this assessment.  Tr. 89, 92.

### G.  Hearing Testimony

On December 15, 2016, the ALJ held a hearing at which Plaintiff testified as to his work history, impairments, and functionality.  Tr. 28-68.  In response to a question about why Plaintiff

cannot work, Plaintiff stated that "I have a concentration problem, and my back, and the medication that I'm taking – basically, I have a problem around people." Tr. 39. According to Plaintiff, he is "stressed all the time" and takes medication that makes him drowsy but that helps at times. Tr. 40-41. Plaintiff was asked about a time when he was let go because of a problem with co-workers or bosses, and Plaintiff testified that "I had a real anger probably and they say something wrong, I just – you know, took it – probably took it the wrong way and just be arguing and fighting, you know, verbally basically." Tr. 43.

Plaintiff testified that he is nervous and distrustful around strangers, but that he spends time with his mom and girlfriend. Tr. 49-50. While Plaintiff reported difficulties with memory, attention, and self-isolation, he did not assert that he was unable to perform any of the activities of daily living listed in the function report. Tr. 50-55. Although Plaintiff stated that he only cooks simple meals unless he is with his girlfriend, and that his girlfriend sometimes needs to accompany him to the store to make sure he buys "all the ingredients she wanted," Plaintiff did not claim to rely on his mom or girlfriend for any other activities of daily living. Tr. 50-55.

## H. The ALJ's Decision

On February 23, 2017, the ALJ issued a decision in which he applied the five-step sequential analysis and concluded that Plaintiff was not disabled. In the first two steps, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 26, 2014, and that Plaintiff's back impairment, HIV, and affective disorder were severe impairments. Tr. 17.

At step three, the ALJ concluded that Plaintiff's impairments, alone or together, did not meet or medically equal the severity of Listing 1.02, 12.04, 14.08, or any other listing. Tr. 17-19. The ALJ specifically found the criteria of Listing 12.04 (for depressive, bipolar, and related disorders) not met because Plaintiff was only moderately limited in: (1) understanding,

remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself. Tr. 18. In his findings, the ALJ highlighted the Function Report, which showed that Plaintiff performs most daily living activities, socializes with his family and his girlfriend, shops in stores, and attends groups and doctor's appointments. Tr. 18.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light, unskilled work that involves occasional interaction with supervisors, coworkers, and the public and permits Plaintiff to be off-task ten percent of the workday. Tr. 19. The ALJ determined that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely are not entirely consistent with the medical evidence and other evidence in the record." Tr. 20.

The ALJ addressed Plaintiff's hearing testimony "that he cannot work due to depression and because of his back pain" as well as medical records pertaining to Plaintiff's treatment for his HIV, back pain, anxiety, and depression. Tr. 20-21. The ALJ also discussed at length Dr. Sanchez's questionnaires from 2014 and 2016, and while he gave them "some weight," he noted that Dr. Sanchez's opinions regarding Plaintiff's limitations were contradicted by evidence of Plaintiff's activities of daily living. Tr. 20-21. He also noted that Dr. Smith's opinion regarding Plaintiff's loss of functionality was contradicted by the evidence of Plaintiff's activities of daily living. Tr. 21. The ALJ ultimately concluded that the evidence did not support Plaintiff's claim of total disability. Tr. 21. According to the ALJ, while the evidence supported the conclusion that Plaintiff's impairments affected his capacity to perform work, Plaintiff retained the residual functional capacity to perform unskilled, light work subject to the limitations noted above. Tr. 21.

At step five, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and he determined that Plaintiff could perform jobs existing in significant numbers in the national economy. Tr. 22. This finding relied on a vocational expert's opinion that an individual with Plaintiff's factors could perform the requirements of representative occupations such as wrapper, housekeeper, and label marker. Tr. 22. Accordingly, the ALJ concluded Plaintiff was not disabled. Tr. 22.

## III.  ANALYSIS

Plaintiff argues that the ALJ erred in his step three analysis and in his assessment of Plaintiff's residual functional capacity. Plaintiff advances two primary contentions: (1) the ALJ should have assigned more weight to Dr. Sanchez's opinions; and (2) the ALJ relied too heavily on the Function Report, which Plaintiff submits was contradicted by his hearing testimony. The Commissioner argues the ALJ's decision must be affirmed because he applied the correct law and made his factual findings based on substantial evidence. The Court agrees with the Commissioner.

### A.  The ALJ's step three analysis was based on substantial evidence

Plaintiff first argues that the ALJ erred at step three in concluding that Plaintiff's mental impairments did not meet the requirements of Listing 12.04. To meet the requirements of Listing 12.04, Plaintiff must meet the criteria of Paragraph A as well as either Paragraph B or Paragraph C.[3] See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F.

To meet the Paragraph B criteria, a claimant must show an "extreme" limitation of one, or "marked" limitation of two, of the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. pt. 404, subpt. P, app. 1, §

---

[3] Plaintiff challenges only the ALJ's findings with respect to Paragraphs B and C.

12.04(B). An "extreme" limitation means that a claimant is not able to function "independently, appropriate, effectively, and on a sustained basis" in an area. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F(2)(e). A "marked" limitation means that such functioning is "seriously limited." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00F(2)(d).

To meet the Paragraph C criteria, a claimant must show a "medically document history of the existence of the disorder over a period of at least 2 years" and evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to the demands that are not already a part of your daily life.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04(C).

Substantial evidence supports the ALJ's finding that Plaintiff does not meet the criteria of Paragraphs B or C. The ALJ relied heavily on the fact that Plaintiff performs most daily activities, as evidenced in the Function Report. Tr. 18. The ALJ discussed these daily activities at length:

> In his function report, the claimant indicated that his daily routine consists of going to groups and doctor's appointments, if he has them. He watches television, plays cards, takes walks, and sometimes visits friends. He takes his medications, eats dinner and goes to bed. He is able to take care of his personal needs but has trouble with dressing due to his back pain. He cooks sometimes, but will eat fast food. He is able to wash dishes, do laundry, sweep and mop. He tries to go outside daily and he is able to travel by walking and using public transportation.

Tr. 19. The ALJ explicitly found that these activities of daily living supported a finding of only moderate limitations with respect to each Paragraph B criteria. Tr. 18. He also noted that Plaintiff's socializes with his girlfriend and his family, shops in stores, and attends groups and doctor's appointments, which indicates that he is only moderately limited in interacting with others. Tr. 18. The ALJ noted that the evidence failed to establish the presence of the Paragraph C criteria as well. Tr. 18.

Contrary to Plaintiff's assertion, his hearing testimony does not undermine the Function Report. Although Plaintiff testified that he spends time with his mom and girlfriend, he did not assert that he relies substantially on them for his activities of daily living. Tr. 49-55. Plaintiff stated that he only cooks "big meals" with his girlfriend, and that he sometimes needs to make a grocery list or have his girlfriend accompany him to the store to make sure he buys "all the ingredients she want(s)," but Plaintiff did not claim to need his girlfriend or anyone else for any other activities of daily living. Tr. 50-55. Further, while Plaintiff reported some difficulties with memory, attention, and self-isolation, he did not assert that he was unable to perform any of the activities of daily living listed in the Function Report. Tr. 50-55.

Plaintiff next argues that Dr. Sanchez's opinions contradicted the Function Report and should have been afforded greater deference. An ALJ should give a treating physician's opinion regarding the severity of an alleged impairment "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." 20 C.F.R. § 416.927(c)(2); see also Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001). However, an ALJ "may assign a treating physician's opinion more or less weight depending upon the extent to which the physician's assessment is supported by the record." Colvin v. Comm'r of Soc. Sec., 675 F. App'x 154, 157 (3d Cir. 2017) (citing Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). It is well-established that "the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 196 n.2 (3d Cir. 2011).

Here, the ALJ found that Plaintiffs reported activities in the Function Report were inconsistent with Dr. Sanchez's view of Plaintiff's functional limitations. Tr. 21. It is proper for an ALJ to consider whether daily activities contradict a treating physician's opinion. 20 C.F.R. §

416.929(c)(3); see also Russo v. Astrue, 421 F. App'x 184, 191 (3d Cir.2011) (finding the ALJ's decision to not apply controlling weight to the treating physician's opinion appropriate where the opinion was inconsistent with plaintiff's reported daily activities).

Moreover, the type of evaluation form is relevant to the ALJ's assignment of weight to a doctor's opinion. The Third Circuit has determined that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Because Dr. Sanchez's 2014 and 2016 opinions contained check-box evaluations, and because they were inconsistent with other evidence in the record, the ALJ's decision to assign Dr. Sanchez's opinions only "some weight" was appropriate.

It was also appropriate for the ALJ to give only "some weight" to Dr. Smith's opinion that Plaintiff could lift and carry up to ten pounds, stand and/or walk for up to two hours, and sit for up to six hours in an eight-hour workday. Tr. 20. The ALJ noted that this opinion was contradicted by other evidence in the record, including Plaintiff's activities of daily living, Plaintiff's testimony that he can lift up to twenty pounds, and the fact that the most recent x-ray of Plaintiff's lumbar spine was "unremarkable." Tr. 21. The ALJ found that although Plaintiff has a history of lumbar disc disease and related back pain, the record indicated no trouble walking or need for assistive devices. Tr. 21.

The ALJ's step three analysis contained "sufficient development of the record and explanation of findings to permit meaningful review." Jones, 364 F.3d at 505. Accordingly, there is substantial evidence to support his determination that Plaintiff's cognitive impairments did not match or equal the criteria for the relevant listed impairments and thus did not entitle him to a finding of disability.

**B. The ALJ's assessment of Plaintiff's residual functional capacity was based on substantial evidence**

The ALJ's assessment of Plaintiff's residual functional capacity must also be affirmed. As required by regulation, the assessment considered all relevant evidence, including Plaintiff's medical records, medical source opinions, the Function Report, and Plaintiff's hearing testimony. Tr. 19-21; see 20 C.F.R. § 404.1545(a). For the reasons stated above, the ALJ's findings regarding Dr. Sanchez's opinions, Dr. Smith's opinion, and the Function Report were based on substantial evidence. These findings provided an appropriate basis for the ALJ's assessment of Plaintiff's residual functional capacity. Tr. 19-21.

To the extent Plaintiff separately argues that his subjective complaints of impairment entitle him to a finding of disability, the Court disagrees. In assessing whether the claimant is disabled, the ALJ must give consideration to the claimant's subjective complaints of impairment. 10 C.F.R. §§ 404.1529, 416.929; Dorf v. Bowen, 794 F.2d 896, 901 (3d Cir. 1986). Subjective complaints alone, however, will not establish that a claimant is disabled. Dorf, 794 F.2d at 901. Although "assertions of pain must be given serious consideration," Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), Plaintiff still "bears the burden of demonstrating that her subjective complaints were substantiated by medical evidence." Alexander v. Shalala, 927 F. Supp. 785, 795 (D.N.J. 1995), aff'd, 85 F.3d 611 (3d Cir. 1996). Accordingly, subjective claims of impairment "will not alone establish . . . [disability]; there must be medical signs and laboratory findings . . . [demonstrating] medical impairments, which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a).

Here, Plaintiff stated that: "he cannot work due to depression and because of his back pain"; "[h]e is depressed all the time"; and "[h]e does not feel comfortable around people and he has [a]

concentration problem." Tr. 19. In assessing these subjective complaints, the ALJ noted the

contradictory evidence in the record, including Plaintiff's own representations in the Function

Report regarding his activities of daily living. Tr. 19. Accordingly, while the ALJ found that

Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, he held

Plaintiff's statements concerning their intensity, persistence, and limiting effects to be inconsistent

with the medical evidence and other evidence in the record. Tr. 20.

**IV.** **CONCLUSION**

Because the Court finds that the ALJ's decision is supported by substantial evidence, the

Commissioner's disability determination is **AFFIRMED.** An appropriate Order accompanies this

Opinion.

Date: November 30, 2018                              /s/ *Madeline Cox Arleo*            .
                                                     **Hon. Madeline Cox Arleo**
                                                     **UNITED STATES DISTRICT JUDGE**